FILED
U.S. DISTRICT COURT
WDNY BUFFALO                         -PS-O-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK         2008 MAR 31  AM 11: 50

LOUISE NOLLEY,

                    Plaintiff,

                                        **DECISION and ORDER**
          -v-                           07-CV-0488S

THE COUNTY OF ERIE, TIMOTHY HOWARD; Sheriff;
ROBERT KOCK, Superintendent; MR. BENSON, ECHC;
DEPUTY J. ROBINSON, ECHC; MR. HIGGINS, Sgt. at ECHC;
MS. REYNOLDS, Sergeant at Erie County Holding Center;
SYLVIA O'NEAL, Deputy at Erie County Holding Center;
T. VAUGHN, Captain at Erie County Holding Center;
MS. STEPHANIE MCCLEAN-BEATHELY; and JEAN L. WOODS,

                    Defendants.

## INTRODUCTION

          Plaintiff, Louise Nolley, who at the time of most of the events alleged in the

Complaint was a pretrial detainee at the Erie County Holding Center ("ECHC"),[1] has filed

a Complaint under 42 U.S.C. § 1983 against a number of defendants, including the County

of Erie, various supervisory and non-supervisory personnel at ECHC, and two "private"

citizens whom she claims filed discriminatory and "hate-vindictive" criminal charges against

her based on her being diagnosed with AIDS.  The Complaint raises a whole host of ill-

defined claims under 42 U.S.C. § 1983.  (Docket No. 1).  Plaintiff also seeks permission

to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a).  For the reasons discussed

below, Plaintiff's request to proceed as a poor person is granted, several of her claims are

---

[1]Plaintiff's eleventh claim appears to allege a due process violation at a disciplinary hearing that
presumably occurred after her conviction in 2007.  (Docket No. 1, Complaint, Tenth and "11th" Claim).

dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), several of her claims will be dismissed unless Plaintiff files an amended complaint by **May 5, 2008**, and one of her claims may proceed without amendment at this time.

## DISCUSSION

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a), Plaintiff is granted permission to proceed *in forma pauperis*. Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Moreover, "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004); *and see Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). "The policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of

important rights because of their lack of legal training.' " *Abbas*, 480 F.3d at 639

(quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).  Nevertheless, even pleadings

submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of

Civil Procedure.  *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). Thus, "[t]o survive

dismissal, the plaintiff must provide the grounds upon which his claim rests through

factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI

Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell

Atl. Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1965 (2007)).

 Based on its evaluation of the Complaint, the Court finds that (1) several of

Plaintiff's claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because

they fail to state a claim upon which relief may be granted, (2) several of the claims

must be dismissed unless plaintiff files an amended complaint with respect to those

claims no later than **May 5, 2008** because said claims fail to state a claim upon which

relief may be granted, and (3) one claim may proceed as pled.

 Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  In order to state a claim

under § 1983, Plaintiff must allege (1) that the challenged conduct was attributable at

least in part to a person acting under color of state law, and (2) that such conduct

deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of

the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993).

3

### A. PLAINTIFF'S CLAIMS

#### 1. First Claim--Excessive Force/Assault

Plaintiff alleges that upon her arrest on May 18, 2006, she was taken to ECHC and placed initially in a holding tank with no sheets, blankets or supplies.  When she refused to lay on the "unclean" mats the detainees had been provided, defendant J. Robinson ordered her out of the cell, verbally abused her and forced her into a wall and punched her.

Based on Plaintiff's allegations, the First Claim may proceed at this time against J. Robinson.[2]

#### 2. Second Claim--Grievance System

The Complaint's Second Claim alleges that there is no grievance system available at ECHC inasmuch as grievance forms are not made available for inmates in the law library and inmates must request forms from a sergeant, copies of grievances cannot be made and mock grievance hearings were held by Defendants Captain Vaughn and Sergeant Higgins.  Plaintiff also claims that she was "punished" for filing grievances but sets forth no facts as to how she was punished or that such punishment rose to the level of retaliation under the First Amendment.  *See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d

---

[2]*See, e.g., McEachin v. McGuiniss*, 357 F.3d 197, 200 (2d Cir. 2004) ("We have frequently reiterated that '[s]ua *sponte* dismissals of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court.'") (quoting *Moorish Sci. Temple of Am. Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982); *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per curiam*) ("Sua sponte dismissal of a *pro se* complaint prior to service of process is a draconian device, which is warranted only when the complaint lacks an arguable basis in law or fact. Where a colorable claim is made out, dismissal is improper prior to service of process and the defendants' answer.") (citations and internal quotations omitted)).

Cir. 2004) (in order to establish retaliation claim an inmate must allege that (1) she engaged in constitutionally protected speech or conduct; (2) defendants took some adverse action against her; and (3) there was a causal connection between the protected activity and the adverse action).

Plaintiff's Second Claim to the extent it alleges a retaliation claim must be dismissed because she has alleged no facts that the defendants took some "adverse action" against her and that there was a "causal connection" between her grievance activity and some unknown adverse conduct. In fact, Plaintiff does not even allege what Defendant or Defendant took what adverse action against her. *See Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (the Second Circuit has cautioned that prisoner claims of retaliation must be approached "with skepticism and particular care.").

Additionally, Plaintiff's claims related to the grievance system or lack thereof at ECHC must be dismissed for failure to state a claim upon which relief can be granted. Prison inmates neither have a constitutionally protected right to a grievance procedure, *see, e.g., Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 138, 97 S.Ct. 2532, 2544, 53 L.Ed.2d 629 (1977) (Burger, J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"), *cert. denied*, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995), nor, as a general rule,

is there a federal right to have state rules or regulations properly administered, *see Ramirez v. Holmes*, 921 F.Supp. 204, 208 (S.D.N.Y. 1996). *See also Graham v. Coughlin*, NO. 86 CIV. 163 (WK), 2000 WL 1473723, at * 7 (S.D.N.Y., September 29, 2000). (inmates do not have a constitutional right to prison grievance procedures). Moreover, the "occasional failure of prison personnel to provide plaintiff with grievance forms does not constitute a cognizable claim under § 1983." *Graham*, 2000 WL 1473723, at * 7. At most, the Constitution entitles an individual to fair procedures when a liberty interest is involved. *See Sandin v. Conner*, 515 U.S. 472, 474, 115 S.Ct. 2293, 2295, 132 L.Ed.2d 418 (1995) (State regulations regarding prison procedures may create an independent constitutionally protected liberty interest under certain narrow circumstances, where they "nonetheless impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.")

Plaintiff does not allege that she was denied grievance forms, but that she had to obtain them from ECHC personnel. She also does not allege in any way that she had some type of liberty interest that was denied by a failure to fairly or properly administer the grievance system or procedures.

Accordingly, the complaint's Second Claim will be dismissed in its entirety pursuant to 28 U.S.C. § § 1915(e)(2)(B)(ii) and 1915A(b)(1) and leave to replead this Claim will be denied. *See Abbas*, 480 F.3d at 639 (Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend.").

### 3. Third and Fourth Claims--Denial of Access to Law Library/Access to Courts

Plaintiff's Third Claim, while not cogently pled, appears to allege that during her detention at the ECHC (1) Plaintiff was denied use of the law library because the library was available to female inmates only one day per week and that library time was often cancelled, (2) Defendant Vaughn conducted sham grievance hearings regarding Plaintiff's grievances about the lack of grievance forms in the law library and that the library did not have 50% of the legal materials mandated by the New York State Department of Correctional Services, (3) Defendant O'Neal, the Law Library Deputy, denied Plaintiff the opportunity to use the law library on several occasions, and (4) Defendants O'Neal and Reynolds made a false allegation against Plaintiff accusing her of stealing a book from the library.

The Fourth Claim alleges that while Plaintiff was at ECHC she was prevented from filing a criminal complaint against defendant Robinson because a ECHC deputy told her that it was ECHC's policy not to take prisoners to City Court to file a criminal charge and that the Deputy told Plaintiff that she would contact the Buffalo Police Department regarding Plaintiff's criminal allegations.  Plaintiff also claims that (1) following her release she went to the City Court Warrant Office and it refused to file a criminal charge against Robinson because Robinson was a County employee and she was then sent to 77 W. Eagle, presumably the County Clerk's Office, to file a complaint,

7

and (2) while she was detained she was prevented from contacting an attorney, her family and the press because "locks" were placed on phones.

While Plaintiff's allegations are poorly pled, the gist of the Third and Fourth Claims are that she was denied access to the courts related to the inaccessibility and inadequacy of the law library and that she was not allowed to file a criminal charge while detained and even after she was released.

Plaintiff's access to the courts claim is wholly inadequate and must be dismissed for failure to state a claim. While it is true that under the Constitution a correctional facility must provide an inmate with meaningful access to the courts, *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the mere limitation of access to legal materials, without more, does not state a constitutional claim, as "'the Constitution requires no more than reasonable access to the courts.'" *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (quoting *Pickett v. Schaefer*, 503 F. Supp. 27, 28 (S.D.N.Y. 1980)); *see also Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir.2004) ("Prisoners, including pretrial detainees, have a constitutional right of access to the courts") (internal quotations and citation omitted). Moreover, in order to state a constitutional claim, a plaintiff must make a showing that she has suffered, or will imminently suffer, actual harm; that is, that she was "hindered [in] h[er] efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180, 135 L. Ed.2d 606 (1996). *Accord Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987).

Thus, Plaintiff must show that she has suffered an actual injury traceable to the challenged conduct of jail officials. A plaintiff has not shown actual injury unless she

shows that a "nonfrivolous legal claim had been frustrated or was being impeded" due

to the actions of prison officials. *Lewis*, 518 U.S. at 351-52, 116 S. Ct. at 2179, 2181.

Taking Plaintiff's claim as true, she nevertheless "offers no facts to explain how [her

limited access to the law library or inadequacies in the law library collection] prejudiced

[her] ability to seek redress from the judicial system." *Smith v. O'Connor*, 901 F. Supp.

644, 649 (S.D.N.Y. 1995). Accordingly, Plaintiff's Third Claim that she has been denied

access to the courts due to her complaints regarding access to the law library and the

library's inadequacies is hereby dismissed.

Similarly, Plaintiff's claim that she was denied the ability to file a criminal charge

or swear out a warrant against Robinson while she was detained at ECHC fails to state

an actionable claim of a denial of access to the courts. Plaintiff claims that she was told

by "Deputy Lisa" at ECHC (who is not named as a defendant) that it was a "'procedure"

of ECHC not to transport prisoners to the City Court's Warrant Office to swear out a

warrant. While the "First Amendment right to 'petition the government for a redress of

grievances' means that an individual has a right to access the courts to redress a

constitutional violation", *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir.1992) (citing

*California Transport v. Trucking Unlimited*, 404 U.S. 508, 513, 92 S.Ct. 609, 30 L.Ed.2d

642 (1972) and *NAACP v. Button*, 371 U.S. 415, 429-30, 83 S.Ct. 328, 9 L.Ed.2d 405

(1963)), Plaintiff's claim herein is not that she was denied the opportunity to redress a

constitutional violation at the hands of a county correctional officer. Rather, her claim is

that she was prevented from filing criminal charges against a deputy sheriff who

allegedly assaulted her. This claim is not actionable because "it is well-settled that a

private citizen does not have a constitutional right to bring a criminal complaint against

another individual." *Price v. Hasly*, No. 04-CV-0090S(SR) 2004 WL 1305744, at * 1

(W.D.N.Y., June 08, 2004) (citing *Leeke v. Timmerman*, 454 U.S. 83, 102 S.Ct. 69, 70

L.Ed.2d 65 (1981); *Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d

536 (1973); *Ostrowski v. Mehltretter*, 20 Fed.Appx. 87 (2d Cir.2001)).

Accordingly, Plaintiff's Fourth Claim will be dismissed with prejudice and leave to

amend this Claim will be denied. *See Abbas,* 480 F.3d at 639 ; *Ruffolo*, 987 F.2d at

131.

### 4. Fifth Claim--Right to Attend Religious Services

Plaintiff's Fifth Claim alleges that on six different dates between May and July

2006, she was denied the opportunity to attend church services and bible study. She

claims that a list is submitted by the unit deputy on Saturdays and on the following

Sunday morning the unit deputy calls out the cell numbers of those persons on the list

to attend services. If a person's name is not on the list, that person cannot attend

services. She claims that on these six occasions she asked to be placed on the

"Protestant Service list" but presumably she was not placed on the list and, therefore,

her cell number was not called the following Sunday morning to attend church services.

The failure of this claim is that the "unit deputy" or someone else who may have

failed to place her on the list is not specifically identified and the Court does not know if

this person is even a named defendant. Moreover, there are no allegations that the

failure to place her on the list was anything but an oversight or negligence. All that

Plaintiff alleges was that on six occasions over the number of months she was at ECHC

she was not placed on a list to attend church services. This does not state a violation

of the First Amendment.  Plaintiff, however, if she wishes can file an amended complaint by **May 5, 2008** attempting to replead her Fifth Claim in which she must, at the least, identify what defendant or defendants she claims denied her the right to attend religious services and bible study and how said defendant or defendants violated her constitutional rights.

While a prisoner does not abandon all her rights at the prison door, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), the *O'lone* Court recognized that " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system,' " *id.* at 348, 107 S.Ct. 2400 (quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948)); *see also Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (making the same point); *see also Marczeski v. Handy*, No. CIV.3:01 CV 01437, 2004 WL 2476440, at * 9 (D.Conn., September 09, 2004)("a pretrial detainee may have a viable First Amendment claim if she was, in fact, denied the ability to attend religious services").  "In order for a plaintiff to establish a First Amendment free-exercise claim, he must show (1) the existence of sincerely held religious beliefs, (2) a substantial burden on the exercise of those beliefs, and (3) that the action taken to thwart the exercise of those rights was not reasonably related to legitimate penological interests." *Gill v. Hoadley*, No. 9:01-CV-323 (FJS/DEP), 2007 WL 1341468, at * 2 (N.D.N.Y., May 4, 2007) (citing *Ford v. McGinnis*, 352 F.3d 582, 588-96 (2d Cir.2003) (citations omitted)).

As noted, Plaintiff's complaint fails to address the essential elements of a free exercise of religion claim. In addition to not identifying the individual who denied her the opportunity to attend religious services on those limited occasions, Plaintiff completely fails to allege that this individual did so to "thwart the exercise of [her sincerely held] religious beliefs and that said individual's actions were not reasonably related to a "legitimate penological interest." Simply stated, the Fifth Claim as pled does not adequately allege a First Amendment claim and will be dismissed unless plaintiff files an amended complaint by **May 5, 2008**.

### 5. Sixth Claim–"Illegal Confinement"

The Complaint's Sixth Claim, liberally construed, appears to allege a conditions of confinement claim under the Eighth Amendment claim. During the dates set forth in the Sixth Claim, however, Plaintiff was a pretrial detainee, and the Eighth Amendment does not apply to pretrial detainees. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 2983 (1983) (citation omitted). Conditions of confinement claims by pretrial detainees must be assessed under the Due Process Clause, which forbids punishment of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861, 1872 n.16 (1979).

A pretrial detainee's Fourteenth Amendment due process rights concerning the conditions of her confinement are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere*, 463 U.S. at 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (citations omitted). A pretrial detainee's complaint regarding the conditions of her confinement must meet both an "objective and a

subjective standard: that is, where [the complaint] alleges that the deprivation is 'sufficiently serious' such that the deprivation denied the minimal civilized measure of life's necessities' and also allege[s] that the defendants 'had a sufficiently culpable state of mind amounting to at least deliberate indifference.'" *Curry v. Kerik*, 163 F.Supp.2d 232, 236 (S.D.N.Y.,2001) (quoting *Dawes v. Walker*, 239 F.3d 489, 493-94 (2d Cir.2001) (citations omitted) (Eighth Amendment), *overruled on other grounds*, *Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 995, 152 L.Ed.2d 1 (2002)) and (citing *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996) (Fourteenth Amendment)). Plaintiff's complaint falls far short of alleging sufficiently a conditions of confinement claim under the Fourteenth Amendment.

Plaintiff alleges that "on or about September 2005 [sic]"[3] she was "double locked" in her cell from 9:00 p.m. to 9:00 a.m. due to budgetary layoffs, and on six days in May and June 2006, she was confined in her cell while deputies attended training and could attend together a "fallen comrade['s]" funeral.

The first failure of this claim is that Plaintiff again fails to identify who, if anyone, subjected her to these inhumane "conditions" or, if she is alleging that the County is responsible for these claimed unlawful conditions, that the conditions she was subjected to on those few occasions during her confinement were as a result of a County policy or custom. Simply alleging that she was advised by a deputy that she was double locked in her cell one day in September 2005 because of layoffs is not sufficient to state a claim against the County. *See Monell v. New York City Dept. of*

---

[3]The complaint alleges that Plaintiff was arrested and taken to ECHC on May 18, 2006. (Complaint, Appendix "A," at 1).

*Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978).

Municipalities are not subject to § 1983 liability solely on the basis of a *respondeat superior* theory. *Collins v. City of Harker Heights*, 503 U.S. 115, 121, 112 S.Ct. 1061, 1066-67, 117 L.Ed.2d 261 (1992); *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-38. To hold a municipality liable in a § 1983 action, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citations and quotations omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (To the extent that a plaintiff sues a municipal official in his official capacity, the plaintiff's claim is treated as a claim against the municipal entity itself) (citation omitted).[4] There are no such allegations pled against the County herein.

The second failure is that the Sixth Claim fails to allege an actionable conditions of confinement claim. The allegations do not support a claim of a "deprivation [that] denied the minimal civilized measure of life's necessities" and that the defendants "had a sufficiently culpable state of mind amounting to at least deliberate indifference." *Curry*, 163 F.Supp.2d at 236 (internal quotations and citations omitted). In fact, the

---

[4] The complaint states that Plaintiff is suing all officials and employees of ECHC in both their "unofficial[/individual]" and "official" capacities. "A suit against a municipal officer in his official capacity is functionally equivalent to a suit against the entity of which the officer is an agent." *Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003) (citing, *inter alia*, *Kentucky*, 473 U.S. at 166). Plaintiff's official capacity claims against the individual defendants who are officials or employees of ECHC are therefore considered to be redundant of his claims against the County of Erie and accordingly will be dismissed. *Alger v. County of Albany*, 489 F. Supp. 2d 155, 165 (N.D.N.Y. 2006) ("A claim against an individual in her official capacity is nothing more than a claim against the municipality itself. Because the Complaint alleges that the individual Defendants acted as employees of the County of Albany, the official capacity claims are dismissed as redundant to the claims against the County of Albany itself.") (citations omitted); *see also La Corte v. Hudacs*, 1996 U.S. Dist. LEXIS 15137, at *12 (N.D.N.Y. 1996) (dismissing official capacity claims against county officials as redundant of claim against county).

14

complaint alleges little more than some inconveniences on a few days during her months-long pretrial detention; none of which in any way support a claim that she was denied the basic life necessities or that the unnamed defendants who allowed or created the conditions complained of were deliberately indifferent to those basic life necessities.

Accordingly, the Sixth Claim is dismissed with prejudice and, because the Court finds that providing Plaintiff the opportunity to replead this claim would be futile or unproductive, such leave is denied as to this Claim. *See Abbas,* 480 F.3d at 639 (Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."); *see also Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend.").

### 6. Seventh Claim–"Inhumane Conditions"

Plaintiff alleges that on approximately 15 separate days from May through August 2006 she was placed into "Intake 1" of the "Court Hold areas" which, among other things, was overcrowded (*i.e.,* 15-35 detainees in an area designated for no more than 5-8 detainees), filthy, contained one toilet which overflowed with waste, not ventilated properly, contaminated with fruit flies from over flowing garbage cans, and on some days barren of soap, toilet paper and sanitary napkins. She also claims that she

was required to lie on mats that were not disinfected and was forced to go outside without adequate seasonal clothing.

While the allegations set forth in this Claim may be sufficient to state a conditions of confinement claim under the Fourteenth Amendment, *see ATSI Communications, Inc.*, 493 F.3d at 98 (the Court cannot say that the Seventh Claim does not sufficiently "raise a right to relief above the speculative level" ) (internal quotation and citation omitted); *see Curry*,163 F.Supp.2d at 236 (citations omitted),[5] the Plaintiff again fails to allege what named defendant or defendants, if any, are responsible for the alleged inhumane conditions or, if she claims that Defendant County is responsible, that the conditions were the result of a policy or custom of the County. Without said allegations, the Seventh Claim fails to state a claim upon which relief can be granted and will be dismissed unless plaintiff files an amended complaint by **May 5, 2008** with respect to this Claim.  Plaintiff's amended complaint with respect to this Claim must allege, at the least, what individual Defendant or Defendants were personally involved in the alleged violations and, if she is alleging that the County is liable for the conditions she was subjected to, that their was a policy or custom which led to or caused her being subject to the alleged unconstitutional inhumane conditions

---

[5]The court in *Curry* sets forth a number of cases where the allegations set forth sufficient facts to state a conditions of confinement claim based on inhumane or unsanitary conditions and compared those cases to others where the courts found that the allegations did not set forth sufficient facts. *Curry*,163 F.Supp.2d at 236. At this stage in the litigation, this case falls closer to the cases in which the district courts found the pleadings sufficient to state a claim, and therefore survives the court's screening under 28 U.S.C. § § 1915(e)(2)(B) and 1915A. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (Sections 1915 and 1915A "provide an efficient means by which a court can screen for and dismiss legally insufficient claims.") (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).

### 7. Eighth Claim

Plaintiff alleges that the exercise by female detainees of their constitutional rights was "conditioned" on the waiver of other rights and that female detainees had to choose which right they wished to exercise over another right. For example, she claims if she wanted to go to church services, she could not have visitation, and if she wanted to go to recreation she could not mail letters. She claims the schedule was set up to deny female detainees of their rights.

This Court finds that this claim is also deficient. First, Plaintiff again fails to allege what defendant or defendants required her to, in effect, choose which right she wished to exercise over another right nor does she allege a policy or custom sufficient to establish liability against the County. Moreover, the allegations are wholly conclusory and do not set forth sufficient facts to establish a violation of Plaintiff's constitutional rights. Plaintiff does not allege the facts or circumstances of any of the alleged constitutional violations. All she alleges is that she and other female detainees sometimes had to choose to exercise one right over another.

For example, if she is claiming a denial of her right to attend religious services, she must allege facts which would establish, as set forth above (1) the existence of sincerely held religious beliefs, (2) a substantial burden on the exercise of those beliefs, and (3) that the action taken to thwart the exercise of those rights was not reasonably related to legitimate penological interests." *Gill*, 2007 WL 1341468, at * 2 (citations omitted). Plaintiff's Seventh Claim is barren of any specifics, and simply sets forth that if she wished to attend religious services she could not have a visit. This is insufficient to allege a claim of a denial of the free exercise clause of the First Amendment. *See*

*O'Lone*, 482 U.S. at 348, 107 S.Ct. 2400. Accordingly, the Seventh Claim will be dismissed unless plaintiff files an amended complaint by **May 5, 2008**.

### 8. Ninth Claim

Plaintiff claims that on or about May 18, 2006, two private citizens, defendants Woods and McLean-Beathley, filed criminal charges against her because she has AIDS. She claims that the defendants discriminated against her because of her diagnosis and brought the charges vindictively. This Claim must be dismissed because private persons, like Woods and McLean-Beathley are subject to liability under § 1983 only if they "willfully collaborated with an official state actor in the deprivation of a federal right." *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993); *see also Annunziato v. The Gan, Inc.*, 744 F.2d 244 (2d Cir.1984) (granting the private individual defendants summary judgment on § 1983 claims where there was no evidence that the private individuals were involved in any "preconceived plan" or "mutual understanding" with the city officials).

Moreover, "[t]o prevail on a malicious prosecution claim under either New York law or § 1983, a plaintiff must show that the defendant maliciously commenced or continued against the plaintiff a criminal proceeding that ended in the plaintiff's favor, and that there was no probable cause for the proceeding." *Marshall v. Sullivan*, 105 F.3d 47, 50 (2d Cir. 1996) (citing *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)). Plaintiff neither alleges that the criminal proceedings "commenced" by Woods or McLean-Beathley terminated in her favor nor that there was a lack of probable cause for the criminal charges. In fact, the charges brought in May 2006, appear to be the

charges upon which she was detained at ECHC and which, based on a logical reading

of the complaint (Complaint, Tenth Claim),[6] ended in a conviction and 60-day sentence.

The Court can only presume that the conviction was based on the charges first brought

in May 2006 inasmuch as the First Claim alleges that she was arrested on May 18,

2006 and the Tenth Claim alleges that she was sentenced to 60 days in jail.

Accordingly, the Tenth Claim will be dismissed with prejudice for failure to state a

claim upon which relief can be granted and any attempts to replead would be futile.

### 9. Tenth Claim

Plaintiff alleges that in 2007 she was sentenced by Amherst Town Justice Klein

to 60-days in jail to be served at the Erie County Holding Center and that defendant

Kock, Superintendent of ECHC, "mandated" that she serve her time at ECHC.  What

this Claim alleges is admittedly not entirely clear to the Court, and the best the Court

can do is presume that Plaintiff is complaining that she had to serve her time at ECHC

instead of the Erie County Correctional Facility.  The Court is not aware of any

authority, constitutional or otherwise, which provides this Court with that authority to

dictate to County officials where Plaintiff should have served his sentence upon

conviction, and Plaintiff does not provide any such authority or even a constitutional

basis for such a claim..  *See Cochran v. Hofmann*, No. 2:06-CV-99, 2007 WL 709303,

at * 2 (D.Vt., March 05, 2007) (citing *Hamilton v. Bowersox*, 2001 WL 1863532, at *9

(E.D.Mo. Dec. 13, 2001) (denying relief where inmate failed "to identify the specific

federal constitutional provision or law that guarantees his placement in a county jail as

---

[6]The Tenth Claim alleges that plaintiff was sentenced in 2007 to 60-days imprisonment.

opposed to a state penal facility upon his lawful conviction for a combination of felonies and a misdemeanor").

Accordingly, the Plaintiff's Tenth Claim is dismissed with prejudice and leave to replead is denied.

### 10. Eleventh Claim

Plaintiff's Eleventh and last Claim alleges only that she was denied her right to call witnesses at a disciplinary hearing conducted in 2007. This Claim must be dismissed, unless Plaintiff files an amended complaint by **May 5, 2008**, because it fails to allege, in any way, that Plaintiff was deprived of a liberty interest subject to due process protections.

A pretrial detainee, as plaintiff presumably was at the time of the disciplinary charges and hearing at issue,[7] is entitled to a different due process analysis than a convicted prisoner, "depending on the purpose and need for the restraint on liberty."[8] *Taylor v. Santana*, No. 05 Civ. 1860(AKH), 2007 WL 737485, at *4 (S.D.N.Y., March 6, 2007) (citing *Benjamin v. Fraser*, 264 F.3d 175, 188-190 (2d Cir.2001). "If the purpose is punitive, it is governed by the standard in *Wolff v. McDonnell*, which requires written notice of the charges at least twenty-four hours before any hearing, a written statement of factual allegations against the inmate, and at least a limited ability to present

---

[7]The Complaint does not specify a date on which she was charged with a violation of a ECHC rule or regulation and subjected to discipline, and therefore, the Court does not know if it was before (pretrial detainee) or after (post-conviction prisoner) her conviction.

[8] The Second Circuit has said that *"Sandin [v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)] does not apply to pretrial detainees and that, accordingly, pretrial detainees need not show that an imposed restraint imposes atypical and significant hardships to state deprivation of a liberty interest protected by procedural due process." *Iqbal v. Hasty*, 490 F.3d 143, 163 (2d Cir .2007) (citing *Benjamin*, 264 F.3d at 188-89).

witnesses and evidence." *Taylor*, 2007 WL 737485, at *4 (citing *Benjamin*, 264 F.3d at 190 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). "If the restraint on liberty is administrative--meaning that it is employed to achieve a legitimate government interest, such as protecting the safety of the individual or the general prison population--then it is analyzed under the less protective standard established by the Supreme Court in *Hewitt v. Helms*: an inmate must 'merely receive some notice of the charges against him and an opportunity to present his views' to the prison official charged with deciding whether to impose the restraint." *Benjamin*, 264 F.3d at 190 (citing *Hewitt*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). "[T]he determination of whether a restraint is administrative or punitive is not formalistic; a purportedly administrative restraint may be punitive if it is found to be 'tantamount to punishment.'" *Taylor*, 2007 WL 737485, at *4 (quoting *Benjamin*, 264 F.3d at 188 (affirming the District Court's finding that a formally administrative restraint amounted to punishment)).

The Claim at issue is wholly silent on whether Plaintiff was subject to any type of restraint on her liberty—*e.g.*, subject to discipline—and, if so, whether the restraint was punitive or administrative. Without these most basic allegations, the Court cannot assess whether or not plaintiff was entitled to any due process protections and, if so, what those protections should have been.

Accordingly, Plaintiff's Eleventh Claim will be dismissed unless plaintiff files an amended complaint by **May 5, 2008** setting forth sufficient allegations to establish a due process claim as set forth above.

## CONCLUSION

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) her request to proceed *in forma pauperis* is granted. For the reasons set forth above, the following claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e): **Second, Third, Fourth, Sixth, Ninth and Tenth Claims**, as are the claims against the Defendants in their official capacities. In addition, the following claims must be dismissed pursuant to 28 U.S.C. § 1915(e) unless Plaintiff files an amended complaint by **May 5, 2008** in which she sufficiently pleads the claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure: **Fifth, Seventh, Eighth and Eleventh Claims**. The **First Claim** against defendant J. Robinson may proceed as pled.

Plaintiff is advised that an amended complaint is intended to <u>completely replace</u> the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied sub nom., Vesco & Co., Inc. v. International Controls Corp.*, 434 U.S. 1014, 98 S. Ct. 730, 54 L. Ed.2d 758 (1978); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, Plaintiff's amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action which the Defendants must answer.

Plaintiff is forewarned that if she fails to file an amended complaint as directed, the claims set forth in the **Fifth, Seventh, Eighth and Eleventh Claims** will also be

dismissed with prejudice pursuant to 28 U.S.C. § 1915(e) and service will be made as to only the **First Claim**.

## ORDER

IT HEREBY IS ORDERED, that Plaintiff's motion to proceed *in forma pauperis* is granted;

FURTHER, that Plaintiff's **Second, Third, Fourth, Sixth, Ninth and Tenth Claims** are dismissed with prejudice;

FURTHER, that Plaintiff is granted leave to file an amended complaint regarding only the **Fifth, Seventh, Eighth and Eleventh Claims** as directed above[9] by **May 5, 2008**;

FURTHER, that the Clerk of the Court is directed to send to plaintiff with this order a copy of the original Complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event Plaintiff fails to file an amended complaint as directed above by **May 5, 2008**, the **Fifth, Seventh, Eighth and Eleventh Claims** will be dismissed with prejudice without further order of the Court and the Clerk of the Court shall terminate all defendants except J. Robinson as parties to this action; and

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by **May 5, 2008**, the Clerk of the Court is directed to cause the United

---

[9]Plaintiff is reminded that she must also include in this amended complaint all the claims that are going forward at this time--the First Claim against Defendant Robinson--along with the claims that she has been granted permission to amend: the Fifth, Seventh, Eighth and Eleventh Claims. Because the amended complaint will become the sole complaint in the action, it is the only complaint which will be served on the parties. Failure to include these claims in it means that they will not be preserved for service on the Defendants.

States Marshal to serve copies of the Summons, Complaint, and this Order regarding the excessive force claim upon Defendant J. Robinson, without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor; and

FURTHER, that, pursuant to 42 U.S.C. § 1997e(g), the Defendants are directed to answer the complaint.

SO ORDERED.

Dated:      *March 30*, 2008
            Buffalo, New York

                                WILLIAM M. SKRETNY
                                United States District Judge